IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CORDIS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 08-779-SLR |
| | ) | |
| BOSTON SCIENTIFIC CORPORATION | ) | **REDACTED** |
| and BOSTON SCIENTIFIC SCIMED, INC., | ) | **PUBLIC VERSION** |
| | ) | |
| Defendants. | ) | |
| | ) | |

## BSC'S REPLY BRIEF ON *RES JUDICATA* AND OTHER PRE-HEARING ISSUES

Josy W. Ingersoll (I.D. #1088)
John W. Shaw (I.D. # 3362)
Adam W. Poff (I.D. #3990)
YOUNG CONAWAY
STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19801
(302) 571-6600

*Attorneys for Defendants*
*Boston Scientific Corporation*
*and Boston Scientific Scimed, Inc.*

*Of Counsel:*

John M. Desmarais
Peter J. Armenio
Young J. Park
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York 10022
(212) 446-4800

Dated: May 20, 2009

# TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................................... 1

ARGUMENT ............................................................................................................................. 3

   I.  THE DOCTRINE OF *RES JUDICATA* BARS CORDIS' CLAIM AGAINST TAXUS LIBERTÉ IN THIS ACTION .............................................................................. 3

      A.  Cordis Is Trying To Re-Litigate The Same Claim It Lost In The 03-027 Case ............. 5

      B.  The Cases That Cordis Relies Upon Are Either Distinguishable Or Inapposite ........... 7

      C.  The "Interests Of Justice" Favor Dismissing Cordis' Repeat Claim ............................... 9

      D.  Cordis Mischaracterizes The JMOL Proceedings ......................................................... 11

   II.  BSC DISPUTES THAT TAXUS LIBERTÉ INFRINGES A VALID AND ENFORCEABLE CLAIM OF THE GRAY '406 PATENT .............................................. 12

      A.  This Court And The Federal Circuit Have Held That Taxus Liberté Is A Different Product Than Liberté ...................................................................................................... 13

      B.  Cordis Misapplies The Test For Whether Two Accused Products Are "Essentially The Same" ............................................................................................................................. 14

      C.  Issue Preclusion Does Not Bar BSC ............................................................................. 16

   III.  EVEN IF *RES JUDICATA* SOMEHOW DOES NOT BAR ITS CLAIM, CORDIS IS NOT ENTITLED TO SUMMARY JUDGMENT OR INJUNCTIVE RELIEF ................. 17

      A.  Genuine Issues Of Material Fact Preclude Cordis' Requested Summary Judgment .... 17

      B.  Cordis Cannot Prove Irreparable Harm ........................................................................ 17

      C.  The Public Interest And Balance Of Hardships Weigh Against An Injunction ........... 18

      D.  Equity Favors Denying Cordis' Motions For An Injunction .......................................... 19

CONCLUSION ...................................................................................................................... 20

## TABLE OF AUTHORITIES

Page

**Cases**

A.C. Aukerman Co. v. R.L. Chaides Const. Co.,
  960 F.2d 1020 (Fed. Cir. 1992)..................................................................................... 8

Acumed LLC v. Stryker Corp.,
  525 F.3d 1319 (Fed. Cir. 2008)........................................................................... 13, 14, 15

Callaway Golf Co. v. Acushnet Co.,
  585 F.Supp. 2d 600 (D. Del. 2008)................................................................................ 19

Cordis Corp. v. Boston Scientific Corp.,
  561 F.3d 1319 (Fed. Cir. 2009)................................................................................ 1, 4, 6, 13

Foster v. Hallco Mfg. Co.,
  947 F.2d 469 (Fed. Cir. 1991)....................................................................................... 16

Hazelquist v. Guchi Moochie Tackle Co.,
  437 F.3d 1178 (Fed. Cir. 2006)....................................................................................... 8

Kessler v. Eldred,
  206 U.S. 285 (1907)......................................................................................... 5, 6, 7

Labelle Processing Co. v. Swarrow,
  72 F.3d 308 (3d Cir. 1995)........................................................................................ 8, 9

Lawlor v. Nat'l Screen Serv. Corp.,
  349 U.S. 322 (1955)............................................................................................ 7

Lemelson v. United States,
  752 F.2d 1538 (Fed. Cir. 1985)....................................................................................... 16

Litecubes, LLC v. Northern Light Prods., Inc.,
  523 F.3d 1353 (Fed. Cir. 2008)....................................................................................... 11

Mannesmann Demag Corp. v. Engineered Metal Prods. Co.,
  793 F.2d 1279 (Fed. Cir. 1986)....................................................................................... 14

Molinaro v. AT&T,
  460 F. Supp. 673 (E.D. Pa. 1978), aff'd 620 F.2d 288 (3d Cir. 1980)............................ 7, 8

Nat'l R.R. Passenger Corp. v. Pa. Pub. Util. Comm'n,
  288 F.3d 519 (3d Cir. 2002)....................................................................................... 16

Reebok Int'l Ltd. v. J. Baker, Inc.,
  32 F.3d 1552 (Fed. Cir. 1994)....................................................................................... 17

*Roche Palo Alto LLC v. Apotex, Inc.*,
    531 F.3d 1372 (Fed. Cir. 2008) .................................................................................. 15

*Williams v. Gillette Co.*,
    887 F. Supp. 181 (N.D. Ill. 1995) ............................................................................ 7, 8

*Young Eng'rs, Inc. v. ITC*,
    721 F.2d 1305 (Fed. Cir. 1983) ........................................................................ 3, 6, 7, 9

**Statutes**

35 U.S.C. § 271 ................................................................................................................ 2, 10

35 U.S.C. § 286 .................................................................................................................... 8

**Other Authorities**

Fed. R. Civ. P. 56(c) ........................................................................................................... 17

*Restatement (Second) of Judgments* (1982) ......................................................................... 9

Defendants Boston Scientific Corporation and Boston Scientific Scimed, Inc. (collectively, "BSC") respectfully submit this reply to Cordis Corporation's ("Cordis'") response to BSC's motion to dismiss this action on *res judicata* grounds and supplement the record on other pre-hearing issues (D.I. 66, "Cordis' response brief").

## INTRODUCTION

Despite Cordis' best efforts to complicate the issues in this case, the core facts are simple and dispositive. In the 03-027 case, Cordis amended its original Complaint to add infringement claims against BSC's Liberté and Taxus Liberté stents. Cordis made the strategic decision to include these stents to bolster its damages claim against BSC's Express and Taxus Express stents by trying to remove the Liberté and Taxus Liberté stents as non-infringing alternatives. Despite this strategic decision, Cordis failed to prove its infringement claim against Taxus Liberté.

Based on Cordis' failure of proof, BSC moved to dismiss the infringement claim against Taxus Liberté with prejudice. This Court initially viewed Cordis' failure of proof as a jurisdictional issue, and dismissed the infringement claim against Taxus Liberté without prejudice. The Federal Circuit, however, determined that the dismissal was not jurisdictional. *Cordis Corp. v. Boston Scientific Corp.*, 561 F.3d 1319, 1339-40 (Fed. Cir. 2009). The Federal Circuit further ruled that the "dismissal of Cordis's infringement claims regarding the Taxus Liberté stent should have been with prejudice." *Cordis Corp.*, 561 F.3d at 1339.

Cordis' infringement claim against Taxus Liberté in this case is the same claim it brought against Taxus Liberté in the 03-027 case. This is beyond dispute no matter how much rhetoric Cordis brings to bear. For example, the Taxus Liberté stent that was accused of infringement in the 03-027 case is the same Taxus Liberté stent that is being accused of infringement in this case. The structure, dimensions and function of the stent are the same. Cordis is also asserting the same Claim 2 of the Gray '406 patent in this case that it asserted against the Taxus Liberté stent

1

in the 03-027 case. Cordis had to prove in 2005, just as its asserts in this case, that Taxus Liberté infringes under 35 U.S.C. § 271. But it failed to do so. Cordis seeks to portray its failure as being limited to a failure to tie Taxus Liberté to the U.S. But that portrayal is both false and misleading. As this Court made clear during the 03-027 trial, "[t]he problem is that at this point, *there is no proof that the Taxus Liberté*, as it might be sold in the United States, *has the same structure*." (D.I. 368 (03-027) at 1050:2-5 (emphasis added)) Given these indisputable facts, Cordis' current infringement claim is barred under the doctrine of *res judicata*.

Cordis argues that Taxus Liberté stents made in 2008 are somehow outside the scope of *res judicata*. But binding Supreme Court and Federal Circuit precedent flatly contradicts that argument. Indeed, Cordis contradicts itself as its argues, on the one hand, that a new claim of infringement can be brought against Taxus Liberté, but, on the other hand, BSC is somehow barred by *res judicata* from arguing that the Gray patent is unenforceable because BSC could have raised that claim in the 03-027 case. This Court should not countenance Cordis' attempt to have *res judicata* apply only when it benefits Cordis.

In addition to being barred from bringing its infringement claim against Taxus Liberté, Cordis' motions for an injunction fail for other reasons as well. As the Supreme Court and this Court have made clear, a patentee must prove irreparable harm to obtain an injunction. Cordis, however, has not and cannot demonstrate *any* irreparable harm based on the alleged infringement by Taxus Liberté. While Cordis initially argued that it would be irreparably harmed because BSC would not be able to pay any damages award that may arise in this case, Cordis has since dropped that baseless argument. In its response brief, Cordis does not even bother addressing the fact that: (1) Cypher has                              REDACTED

2

the U.S.; (2) Cordis has not lost any goodwill due to sales of Taxus Liberté; and (3) there has been no price erosion since the launch of Taxus Liberté.

As always, Cordis harps on the irrelevant fact that stents other than Taxus Liberté were found to infringe the Palmaz '762 patent. But that patent expired in November 2005. It has no bearing on this case and Cordis' constant reference to it only highlights its lack of legitimate arguments. Moreover, *every* cardiovascular stent, drug-eluting or bare-metal, that Cordis has sold since 1999 has infringed one or more BSC patents. For example, despite a jury verdict affirmed on appeal, Cordis continues to infringe BSC's '021 patent by selling the Cypher stent throughout the United States. In a brazen display, Cordis asks this Court to enjoin the Taxus Liberté stent because it believes such an injunction would help it make more infringing sales of the Cypher stent. Equity should not allow an injunction in such circumstances.

<u>ARGUMENT</u>

**I.     THE DOCTRINE OF *RES JUDICATA* BARS CORDIS'
        <u>CLAIM AGAINST TAXUS LIBERTÉ IN THIS ACTION</u>**

Cordis' main argument against *res judicata* is based on the assertion that it somehow could not have brought its current infringement claim against Taxus Liberté in the earlier 03-027 case. But this assertion is flat wrong. Not only could Cordis have brought the instant infringement claim against Taxus Liberté in the 03-027 case, it did bring that claim *and lost*.

As set forth in BSC's opening supplemental brief, under patent law, a "claim" for purposes of *res judicata* is defined by the asserted patent and the device accused of infringement. *Young Eng'rs, Inc. v. ITC*, 721 F.2d 1305, 1316 (Fed. Cir. 1983). The Taxus Liberté stent that Cordis is accusing of infringement in this case is the same Taxus Liberté stent that Cordis accused of infringement in the 03-027 case. Moreover, Claim 2 of the Gray patent, which Cordis asserts in this case, is the same claim that it asserted against Taxus Liberté in the 03-027 case.

3

During its case-in-chief in the 03-027 case, Cordis admittedly failed to prove that Taxus Liberté infringes the Gray patent. (D.I. 66 at 6 ("Cordis had *planned to offer such proof only in the damages phase*.") (emphasis added)) Cordis tries to downplay this failure as being limited to a failure to tie Taxus Liberté to the U.S. But that is false and misleading. As this Court has explained, "*there is no proof that the Taxus Liberté*, as it might be sold in the United States, *has the same structure*." (D.I. 368 (03-027) at 1050:2-5 (emphasis added)) But even if Cordis' failure of proof were as limited as it suggests, the Federal Circuit has ruled that "the question of whether the Taxus Liberté stent had a nexus to the United States was an element of Cordis's liability claims." *Cordis Corp.*, 561 F.3d at 1339. *Res judicata* thus applies and bars Cordis from bringing its current claim, which is the same as its failed claim in the 03-027 case.

This Court should reject Cordis' attempt to somehow differentiate its claims against Taxus Liberté in this case and the 03-027 case based on the fact that Taxus Liberté obtained FDA approval in the U.S. in 2008. Indeed, at the time Cordis added the Liberté and Taxus Liberté stents to the 03-027 case, the Liberté stent did not have FDA approval for sale in the U.S. either. (D.I. 65 at 4) Nonetheless, Cordis was still able to obtain a judgment of infringement against that stent, which was affirmed in the first instance on appeal.[1]

Cordis made the strategic decision to add the Taxus Liberté to the 03-027 case, and continued to allege that Taxus Liberté infringed the Gray patent through trial. Cordis made that strategic decision to bolster its damages claim against Express and Taxus Express, but failed to prove that Taxus Liberté infringed at trial. *Res judicata* does not permit Cordis a second bite at the apple. Nor does equity.                     REDACTED

---

[1]   BSC has filed a combined petition for panel rehearing and rehearing *en banc* with the Federal Circuit. That petition is still pending.

REDACTED                                    And this Court gave Cordis a full and

fair opportunity to prove its case. But Cordis failed. Cordis knew the risks and rewards of its

decision and should be held to it.

**A.    Cordis Is Trying To Re-Litigate The Same Claim It Lost In The 03-027 Case**

Cordis argues that it is somehow not re-litigating the same patent infringement claim in

this action that it lost in the 03-027 case. According to Cordis, the patent infringement claim in

the 03-027 case involved Taxus Liberté stents that were made before June 2005 and this case

only involves Taxus Liberté stents made since 2008. But this temporal distinction is irrelevant.

As noted in BSC's opening supplemental brief (D.I. 65), an adjudication on the merits of

a patent claim not only applies retroactively to acts involving the accused product, but also bars

future claims on the same product and the same patent. This has been the law since the Supreme

Court addressed this question over a century ago in *Kessler v. Eldred*:

> First. Did the decree in [defendant's] favor . . . have the effect of
> entitling [defendant] *to continue the business of manufacturing
> and selling* throughout the United States the same [product] he had
> theretofore been manufacturing and selling, without molestation by
> [plaintiff], through the [prior asserted] patent?

206 U.S. 285, 287 (1907) (emphasis added). The Supreme Court answered this question in the

affirmative, holding that the prior adjudication barred the plaintiff from re-asserting its patent

claims, even against future acts by the alleged infringer:

> The court, having before it the respective rights and duties on the
> matter in question of the parties to the litigation, *conclusively
> decreed the right of [defendant] to manufacture and sell his
> manufactures* free from all interference from [plaintiff] by virtue
> of the [prior asserted] patent, *and the corresponding duty of
> [plaintiff] to recognize and yield to that right everywhere and
> always.*

*Id.* at 288 (emphases added).

The Federal Circuit's decision in the 03-027 case confirms that Cordis cannot avoid *res judicata* by arguing that the Taxus Liberté stent received FDA approval in 2008. According to the Federal Circuit, "dismissal of *Cordis's infringement claims* regarding the Taxus Liberté stent should have been with prejudice." *Cordis Corp.*, 561 F.3d at 1339 (emphasis added). The Federal Circuit did not limit its holding to infringement claims at a certain point in time.

Cordis' attempt to distinguish *Kessler* is unavailing. Resorting to wordplay, Cordis seeks to confuse the "same product" requirement of *res judicata*, which requires only the same product design and function. Using the "same product" phrase, Cordis seeks to graft on an additional requirement that the product not only have the same design and function but have been manufactured at the time of adjudication. But that is not the law. The *Kessler* Court never suggested that an accused product with the same design and function in a second suit had to have been manufactured at the time of the first suit to trigger *res judicata*. Given that six years had passed between the two suits, it is highly likely that the products with the same design and function accused of infringement in the second suit had not been manufactured at the time of the first suit. *Kessler*, 206 U.S. at 285-86. Moreover, the *Kessler* Court expressly included products manufactured in the future within the scope of the preclusive effect. *Id.* at 288 ("Kessler had the right *to manufacture* . . . the electric cigar lighter") (emphasis added).

Cordis' assertion that each alleged act of infringement somehow represents a "new claim" unaffected by *res judicata* is incorrect as a matter of law and ignores the holdings of *Kessler*, *Young Engineers*, and the other cases cited by BSC. Indeed, if Cordis' arguments were correct, patent disputes could never reach resolution — the losing party could choose to re-litigate an infringement claim every time it sold another accused product because each such post-judgment act would somehow give rise to a new "claim" that could not have been raised earlier.

**B.**     **The Cases That Cordis Relies Upon Are Either Distinguishable Or Inapposite**

Contrary to Cordis' belief, the Supreme Court's decision in *Lawlor v. National Screen Service Corp.* does not allow Cordis to bring the same patent infringement claim at a later time under the guise of "a new claim." As discussed in BSC's opening supplemental brief (D.I. 65 at 13), *Lawlor* addressed an antitrust claim, not a claim for patent infringement. 349 U.S. 322, 325 (1955). And *Lawlor* did not address repetition of the same accused acts, but found that "there are new antitrust violations alleged here — deliberately slow deliveries and tie-in sales, among others — not present in the former action." *Id.* at 328. While Cordis argues that *Lawlor* applies to continuing torts such as patent infringement, *Lawlor* did not rely on the characterization of the defendants' conduct as a continuing tort to reach its holding. *Id.* at 328-30.

Notably, courts, including the Federal Circuit, have rejected Cordis' proposed application of *Lawlor* to patent cases. For example, in analyzing *Lawlor*, the Federal Circuit in *Young Engineers* recognized that "the purportedly similar series of acts [leading to the second suit] were *found to be in part different in nature.*" *Young Eng'rs*, 721 F.2d at 1316 (emphasis added).

For the reasons set forth in BSC's opening supplemental brief, this Court should also not follow the flawed decision in *Williams v. Gillette Co.*, 887 F. Supp. 181 (N.D. Ill. 1995). (D.I. 65 at 12-13) In failing to follow the Supreme Court's decision in *Kessler* and the Federal Circuit's decision in *Young Engineers*, the *Williams* court applied the wrong law. The resulting decision is thus legally erroneous and of no value.

A more instructive district court case is *Molinaro v. AT&T*, which does follow *Kessler*. 460 F. Supp. 673 (E.D. Pa. 1978), *aff'd* 620 F.2d 288 (3d Cir. 1980). *Molinaro* is also more

factually similar to this case than *Williams*.[2] The first action in *Molinaro* was dismissed with prejudice because the patentee failed to provide court-ordered discovery. *Id.* at 675. Like Cordis does now, the patentee in *Molinaro* attempted to bring "essentially the same allegations of infringement" for the second time against the same product by arguing that the "infringement issues [from the first action] were never resolved . . ." *Id.* at 675-77. According to the *Molinaro* court, however, an involuntary dismissal "'with prejudice' has the same effect as the [] dismissal 'on the merits.'" *Id.* at 676. Indeed, the preclusive effect of the 03-027 case is even stronger since Cordis was permitted to try its infringement claim against the Taxus Liberté stent and failed to meet its burden of proof.

Cordis' reliance on *Hazelquist v. Guchi Moochie Tackle Co.* (D.I. 66 at 22) is misplaced as that case merely addressed the discharge of debts in bankruptcy and the date on which those debts accrued. 437 F.3d 1178, 1180 (Fed. Cir. 2006). The statement that Cordis quotes, "each act of patent infringement gives rise to a separate cause of action" does not relate to whether later acts of patent infringement are subject to *res judicata. See A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1031-32 (Fed. Cir. 1992).

Cordis' citation to *Labelle Processing Co. v. Swarrow* (D.I. 66 at 23) is similarly unavailing as that case neither addressed a patent infringement claim nor applied any of the controlling precedent discussed above. 72 F.3d 308 (3d Cir. 1995). Moreover, as *Labelle* recognized, "new factual allegations supporting a previously denied claim will not create a new cause of action for the same injury previously adjudicated." *Id.* at 314. Cordis' claim for

---

[2]  Ignoring the similarities between this case and *Molinaro*, Cordis argues only that the patent in *Molinaro* purportedly expired before the judgment in the first case. (D.I. 66 at 24) But even if this were true, it played no role in the court's decision to bar the second suit. Moreover, damages can be sought on an expired patent for the six years prior to a suit on the portion of that period prior to patent expiration. 35 U.S.C. § 286.

8

infringement in this case is based on the same alleged injury it claimed in the 2005 trial: that the Gray patent is infringed by the Taxus Liberté stent. Even if Cordis has new purported evidence it desires to present, *Labelle* does not excuse Cordis' prior failure of proof at trial.

The *Restatement (Second) of Judgments* (1982) also does not support Cordis' arguments. (D.I. 66 at 22) The Federal Circuit in *Young Engineers* summarized the *Restatement* as follows:

> Claim preclusion, where found, operates to bar subsequent assertion of the same transactional facts in the form of a different cause of action or theory of relief. Generally, this principle rests on the assumption that ***all forms of relief could have been requested in the first action***.

721 F.2d at 1314 (emphasis added). If Cordis had prevailed on its claim against Taxus Liberté in the 03-027 case, Cordis could have sought the same relief it seeks in this action: an injunction and damages. This further confirms the identity of the claims in this case and the 03-027 case.

Lastly, mismatching issue and claim preclusion concepts, Cordis contends that there would be no risk of subsequent litigation if BSC had won the 03-027 case against Taxus Liberté based on a finding of non-infringement of the asserted claim limitations. This argument makes no sense. First, a dismissal with prejudice has the same *res judicata* effect as a finding of non-infringement of the asserted claims. Second, there are several ways a patentee's claim can be dismissed with prejudice. Under Cordis' flawed understanding, an accused infringer would continually be at risk for multiple litigations until each one of those possibilities was exhausted.

## C.    The "Interests Of Justice" Favor Dismissing Cordis' Repeat Claim

Hoping to excuse its failure to prove infringement against Taxus Liberté in the 03-027 case, Cordis argues that it would somehow not be in the "interests of justice" to apply *res judicata* to dismiss its repeat infringement claim against Taxus Liberté in this case. (D.I. 66 at 25-29) On the contrary, the "interests of justice" strongly favor dismissing Cordis' repeat action.

Several years before Taxus Liberté was approved for sale in the U.S., Cordis rushed into this Court seeking leave to amend its pending Complaint in the 03-027 case to add patent infringement claims against all stents "using the name[] . . . Liberté as all or part of the trademark." (D.I. 135 (03-027), Ex. A at 3) Cordis' motivation was apparent — Cordis hoped to bolster its damages claims against BSC's Express and Taxus Express stents by removing the Liberté and Taxus Liberté stents as non-infringing alternatives. Tellingly, Cordis does not dispute that this was its motivation in its response brief.

BSC opposed Cordis' motion to amend, stating that "the most efficient way to address the dispute between the parties is for Cordis to file a separate action with respect to the Liberté family of stents . . . " (D.I. 144 (03-027) at 12) But Cordis refused to pursue its new claims in a separate action, arguing that "[t]he interests of efficiency and judicial economy overwhelmingly favor granting Cordis leave to amend and trying all its claims against BSC together." (D.I. 147 (03-027) at 9) In short, Cordis made a strategic choice to accuse the Liberté and Taxus Liberté stents of infringement in the 03-027 case. Cordis pursued this strategy through discovery and the pre-trial process. Cordis, however, failed to prove its claim that Taxus Liberté infringed at trial.

It is not in the "interests of justice" to allow Cordis to re-try the same claim against Taxus Liberté. Cordis took discovery for over a year on Taxus Liberté in the 03-027 case and steadfastly accused it of infringing the Gray patent throughout discovery. Cordis maintained its claim against Taxus Liberté in the 2005 Joint Proposed Pretrial Order in the 03-027 case, stating that it was prepared to try whether "BSC has infringed claims 1, 2, 11, 12, and 13 of the '406 patent . . . by making, using, offering for sale, or selling the . . . Taxus Liberté stents. 35 U.S.C. § 271." (D.I. 332 (03-027) at Tab 4, p. 1) Cordis never requested that the Pretrial Order be modified. Following the Pretrial Order, Cordis tried its claim against Taxus Liberté in 2005 and

lost. Cordis never alleged any procedural or evidentiary error with respect to its failed claim, and that failed claim properly bars Cordis' current Taxus Liberté claim under *res judicata*.

Cordis' misrepresentation of the trial record in the 03-027 case cannot swing the "interests of justice" in its favor. BSC did not assure "the Court that a dismissal would not give it *carte blanche* to launch Taxus Liberté in the U.S. if Cordis prevailed on its infringement claims against Liberté." (D.I. 66 at 27) On the contrary, BSC continually maintained that the dismissal of Cordis' infringement claim against Taxus Liberté should be with prejudice and argued that there was no justification for allowing Cordis to reopen the record:

> What we said in our — this is in BSC's statements of the issues that remain to be litigated right from the pretrial order, and what we said, the very first issue is whether BSC has made, marketed and/or soiled [sic] Taxus Liberté coronary stents outside of the United States. Whether BSC has made the bare metal stent portion of Taxus Liberté coronary stents in the United States. . . . Mr. Diskant was on notice of this throughout the entire negotiations of the pretrial order in this case, and if he believed he had proof . . . he should have put it in. There is no basis to reopen the record. He has been on notice the entire time.

(D.I. 368 (03-027) at 1053:16-1054:12)

Nor did the Federal Circuit in *Litecubes, LLC v. Northern Light Products, Inc.* hold for the first time that U.S. activity is an element of a claim for patent infringement and not a jurisdictional issue. 523 F.3d 1353 (Fed. Cir. 2008). Indeed, *Litecubes* relied on prior decisions to reach its holding. *Id.* at 1365. Cordis may have misapprehended the law in 2005, but it certainly misstates it now.

### D.   Cordis Mischaracterizes The JMOL Proceedings

Cordis attempts to shift attention from its failure of proof by mischaracterizing "colloquy" between this Court and BSC regarding later sales of Taxus Liberté in the U.S. As explained in BSC's opening supplemental brief, BSC did not represent that it would be precluded

from selling Taxus Liberté if the bare-metal Liberté stent were found to be infringing. (D.I. 65 at 17) Such a representation would make no sense given BSC's repeated requests that Cordis' Taxus Liberté infringement claim be dismissed with prejudice.

Taking out of context BSC's statement during JMOL proceedings that "it would be difficult for [BSC] to sell [Taxus Liberté] without taking some steps," Cordis speculates that "[t]he Court had reason to believe, from that colloquy, that the steps to which counsel referred were trying to get a license from Cordis or redesigning the product." (D.I. 65 at 28) On the contrary, BSC made clear during those proceedings that these "steps" would involve "hav[ing] a hearing before [the court] as to whether that product had all the same features, all the same relevant features." (D.I. 368 (03-027) at 1062:9-22, *see id.* at 1063:6-15)

## II.    BSC DISPUTES THAT TAXUS LIBERTÉ INFRINGES A VALID AND ENFORCEABLE CLAIM OF THE GRAY '406 PATENT

Further supporting BSC's motion to dismiss under *res judicata*, Cordis itself seeks to apply *res judicata* in this action. While arguing that it is not barred from bringing its Taxus Liberté infringement claim in this action, Cordis contends that BSC *is barred* from raising new defenses to this claim under *claim* preclusion. (D.I. 66 at 11) For example, Cordis argues that BSC could have raised an inequitable conduct defense in the 03-027 case.[3] If this Court were to determine that Cordis' current infringement claim against Taxus Liberté is not barred under *res judicata* because it is somehow different from the claim asserted in the 03-027 case, it should also hold that BSC is not barred from raising new defenses under that same doctrine.

---

[3]    Notably, Cordis has not asserted that either claim preclusion or issue preclusion bars BSC from asserting its estoppel and laches defenses. (*See* D.I. 18 at ¶¶ 47-48)

As a preliminary matter, Cordis fails to cite a single case that permitted a party to use claim preclusion to ensnare a product previously dismissed with prejudice. Accordingly, there is no basis for the unspoken keystone of Cordis' argument: that claim preclusion based on one product can be applied to a different product that was itself dismissed with prejudice. Cordis' claim preclusion arguments fail on that point alone and need not be considered further. But even if considered further, Cordis cannot rely on claim preclusion based on the Liberté stent since the two stents are not "essentially the same." *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1324 (Fed. Cir. 2008) ("[C]laim preclusion does *not* apply unless the accused device in the action before the court is 'essentially the same' as the accused device in a prior action between the parties . . . . Accused devices are 'essentially the same' where the differences between them are merely 'colorable' or 'unrelated to the limitations in the claim of the patent.'") (emphasis in original) (internal citations omitted).

### A.    This Court And The Federal Circuit Have Held That Taxus Liberté Is A Different Product Than Liberté

This Court determined that the Taxus Liberté stent is a different product than the Liberté stent. (D.I. 416 (03-027) at 62 ("The court . . . considered the Taxus Liberté stent to be a different product than the Liberté bare metal stent.")) The Federal Circuit affirmed this finding. *Cordis Corp.*, 561 F.3d at 1339 n. 17 ("Cordis argues that the Taxus Liberté stent has the same structure as the Liberté stent. We see no error in the district court's determination that the Taxus Liberté stent and the Liberté stent are different products.").

Cordis does not dispute that the Taxus Liberté stent is a different product than the Liberté stent in its response brief. Instead, Cordis attempts to sidestep this adjudicated fact by insisting that the differences between the two stents are somehow "merely colorable." Cordis' own expert, however, admitted that the Taxus Liberté stent differs from the Liberté stent with respect to the

13

axial flexibility Cordis asserts is a limitation of Claim 2 of the Gray patent. As Dr. Buller testified, the inclusion of the drug and polymer coating in the Taxus Liberté stent makes that stent thicker and tackier than the Liberté stent, leading to a difference in trackability and axial flexibility. (D.I. 39 at 9 n.2) Thus, the Taxus Liberté and Liberté stents are not "essentially the same," and claim preclusion does not apply. *Acumed*, 525 F.3d at 1326-27 (finding that claim preclusion did not apply where device in second suit was longer than device in first suit, and this difference could impact a claim limitation regarding the device's positions). Cordis put Taxus Liberté separately at issue in the 03-027 case. That conduct flatly contradicts its current arguments and belies any assertion that Liberté and Taxus Liberté are the same.

Cordis' assertion that Claim 2 of the Gray '406 patent is not specifically directed to a stent coating is irrelevant. Whether two accused products are "essentially the same" depends on whether their differences are related to the asserted claim limitations, not whether the claim specifically covers the difference, *i.e.*, whether the claim requires a stent coating. *Id.* at 1324. The fact that Claim 2 of the Gray '406 patent does not contain a limitation requiring a stent coating does not mean that such a coating could not affect any limitation of the asserted claim, including Cordis' asserted axial flexibility limitation.[4]

### B.   Cordis Misapplies The Test For Whether Two Accused Products Are "Essentially The Same"

Conceding that it is "theoretically correct" that the Taxus Liberté stent has less axial flexibility than the Liberté stent, Cordis contends that BSC has not shown that the Taxus Liberté stent lacks axial flexibility altogether. (D.I. 66 at 14) In doing so, Cordis improperly conflates

---

[4]   Cordis' citation to *Mannesmann* for the proposition that "[t]he presence of additional elements is irrelevant if all the claimed elements are present in the accused structure" misses the point. (D.I. 66 at 13, *citing* 793 F.2d 1279, 1282-83 (Fed. Cir. 1986)). The issue in *Mannesmann* was whether the accused product literally infringed the asserted claim — claim preclusion was not at issue. 793 F.2d at 1282-83.

the legal standards for determining whether two products are "colorably different" and for determining whether a second product infringes the asserted claim. In determining whether two products are "colorably different," it is not necessary for the differences to render the accused product noninfringing as a matter of law with respect to the relevant limitation. *See Acumed*, 525 F.3d at 1324.[5] The two products need only be different in a way that is relevant to the limitations of the asserted claim. *Id.* at 1326-27.

Cordis' approach to determining whether two products are different during the 03-027 case contradicts its current arguments. During the 03-027 case, Cordis' expert testified that the Express Biliary stent infringed the Palmaz patent despite having a different thickness than the Express stent because "it falls into the range of products that have thin-walled tubular members." (D.I. 365 (03-027) at 461:5-18) During JMOL proceedings, Cordis stated that the Express and Express Biliary stents were different products requiring unique proof because of their difference in thickness — a difference relevant to the asserted claims of the Palmaz patent:

> The verdict we seek is, I think there have to be three liability verdicts. One has to be on stents having a structure of Express. Two, stents having the structure of Express biliary, *because it has a different thickness* and, therefore, presents a different issue to the jury. And stents having the structure of Liberté.

(D.I. 368 (03-027) at 1056:20-23) Consistent with Cordis' own prior approach, the Taxus Liberté stent is not "essentially the same" as the Liberté stent because of its different axial flexibility, irrespective of Cordis' assertion that it nonetheless infringes.

---

[5] Cordis' citation to *Roche* is inapposite. (D.I. 66 at 12-13) In that case, the two products at issue had different concentrations of a certain ingredient that still fell within the explicitly claimed range. *Roche Palo Alto LLC v. Apotex, Inc.*, 531 F.3d 1372, 1380 (Fed. Cir. 2008). The defendant argued that the products were different because they were stabilized by different mechanisms, *not because of their differences in concentrations. Id.* The court ruled that "[t]he fact that they are stabilized by different mechanisms, even if true, is irrelevant because both formulations are encompassed by the claims of the '493 patent." *Id.* Unlike in *Roche*, the difference between the Taxus Liberté and Liberté stents raised by BSC is indisputably relevant to Cordis' asserted axial flexibility limitation of Claim 2 of the Gray patent.

Cordis seeks to criticize Dr. Moore, BSC's *technical expert*, for not making the legal conclusion that the differences between the Taxus Liberté and Liberté stents are "more than 'merely colorable'" and for not asserting that BSC "would have a non-infringement defense that the Taxus Liberté does not have the 'axial flexibility' required by Gray."[6] (D.I. 66 at 15) It is *Cordis' burden* to show that the Taxus Liberté and Liberté stents are essentially the same. *Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 480 (Fed. Cir. 1991). And Cordis does not deny that both Drs. Moore and Buller have stated that the Taxus Liberté stent's drug and polymer coating is relevant to its axial flexibility. Nor does Cordis dispute that it treated the Taxus Liberté stent as a different accused product for purposes of infringement throughout the 03-027 case, including by alleging infringement of different claims. Under the proper legal test and Cordis' own prior approach, the Taxus Liberté stent is not "essentially the same" as the Liberté stent and thus claim preclusion does not apply.

### C.   Issue Preclusion Does Not Bar BSC

BSC is also not barred by issue preclusion from challenging infringement and validity.[7] There must be a "final judgment" in a prior action for issue preclusion to apply. *Nat'l R.R. Passenger Corp. v. Pa. Pub. Util. Comm'n*, 288 F.3d 519, 525 (3d Cir. 2002) (listing the presence of a "final and valid judgment" as a prerequisite to the applicability of issue preclusion).

---

6   Cordis protests that BSC did not cross-examine Dr. Buller regarding the Taxus Liberté stent during the 03-027 case, including with respect to Dr. Buller's purported testimony that both stents meet the "axial flexibility" limitation of Claim 2. (D.I. 66 at 4-5) But, as BSC discussed in its opening supplemental brief, Cordis offered no evidence whatsoever regarding the Taxus Liberté stent. Any "testimony" offered by Dr. Buller was merely conclusory and the fact that BSC declined to cross-examine him regarding those conclusions is irrelevant. *See, e.g., Lemelson v. United States*, 752 F.2d 1538, 1551 (Fed. Cir. 1985) ("giv[ing] no weight to the series of conclusory statements offered by [plaintiff's] expert witness").

7   The parties did not try the issue of unenforceability in the 03-027 case. Accordingly, Cordis has not asserted that issue preclusion bars BSC's inequitable conduct defense.

16

Such finality is absent with respect to the 03-027 case, since BSC has filed a petition for panel rehearing with the Federal Circuit regarding, *inter alia*, the validity of Claim 2 of the Gray '406 patent. Cordis' issue preclusion arguments with respect to invalidity are premature. Moreover, because the differences between the Taxus Liberté and Liberté stents are not "merely colorable," as set forth above, issue preclusion does not bar BSC from asserting that the Taxus Liberté stent does not infringe the Gray '406 patent. *Id.* (noting that "the issue sought to be precluded [must be] the same as that involved in the prior action" for issue preclusion to apply).

### III.   EVEN IF *RES JUDICATA* SOMEHOW DOES NOT BAR ITS CLAIM, CORDIS IS NOT ENTITLED TO SUMMARY JUDGMENT OR INJUNCTIVE RELIEF

#### A.   Genuine Issues Of Material Fact Preclude Cordis' Requested Summary Judgment

As set forth in BSC's opening supplemental brief, even if the doctrine of *res judicata* somehow did not bar Cordis' claims against Taxus Liberté, the existence of genuine issues of material fact renders summary judgment inappropriate. Fed. R. Civ. P. 56(c). As set forth in BSC's opposition to Cordis' motion for a preliminary injunction, genuine issues of material fact exist regarding the questions of non-infringement and unenforceability. (D.I. 39 at 36-37) The existence of these issues precludes summary judgment. Moreover, Cordis' premature motion for summary judgment — made prior to a Scheduling Order or any discovery on its claim — is untimely and properly denied *a priori*. Tellingly, Cordis did not address any of these points in its response brief.

#### B.   Cordis Cannot Prove Irreparable Harm

Cordis' motion for a preliminary injunction should likewise be denied, if considered, because Cordis has failed to demonstrate irreparable harm. *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1556 (Fed. Cir. 1994) ("[A] movant cannot be granted a preliminary injunction without findings by the district court that the movant carried its burden on *both* factors

[likelihood of success on the merits and irreparable harm].") (emphasis in original). In its opening supplemental brief, BSC demonstrated that Cordis has not been irreparably harmed by BSC's alleged infringement.

REDACTED

In its opposition to Cordis' motion for a preliminary injunction, BSC also noted, *inter alia*, that Cordis licensed the Gray patent to competitors and that several non-infringing alternatives are dominating the drug-eluting stent market.

In its response brief, Cordis has not addressed, much less rebutted, any of these points. Nor does Cordis dispute BSC's contention that:

REDACTED

BSC has also fully rebutted each of Cordis' last-minute attempts to prove irreparable harm. As discussed in BSC's opening supplemental brief, Cordis cannot attribute *any* loss of Cypher sales to Taxus Liberté and cannot prove that it has lost any goodwill. Nor has Cordis presented any evidence that the launch of Taxus Liberté,        REDACTED REDACTED resulted in price erosion. Given the complete silence on these issues in Cordis' response brief, Cordis has apparently abandoned its arguments. This Court should deny Cordis' motion for a preliminary injunction.

C.    **The Public Interest And Balance Of Hardships Weigh Against An Injunction**

For the reasons set forth in BSC's opposition to Cordis' motion for a preliminary injunction, the public interest and balance of hardships weigh against an injunction. For example, certain physicians prefer to use the Taxus Liberté stent. Moreover, while there are

18

other drug-eluting stents in the market, Taxus Liberté and Taxus Express are the only drug-eluting stents that deliver the drug paclitaxel. The other drug-eluting stents use -olimus-type drugs, which function through a different cellular mechanism. In their declarations, Drs. Garratt and Turco state that Taxus Liberté is the best paclitaxel-eluting stent available and that it would contravene public interest to no longer make it available to physicians and patients. Drs. Garratt and Turco also cite studies showing that, in certain types of cases, *e.g.*, diabetic patients, paclitaxel-eluting stents may be more effective than -olimus-type drug-eluting stents.

In its response brief, Cordis cites results from the ZEST trial, which only recently became available. In his supplemental declaration, Dr. Garratt notes that the results from the ZEST trial are inconsistent with results seen in other trials. (Garratt Suppl. Decl. at ¶¶ 10-11) Dr. Garratt explains that, given the recent availability of those results, members of the medical community are still analyzing their reliability. For example, the results from the ZEST trial have not yet been published in any peer-reviewed journal. Lastly, Dr. Garratt has stated that the results from the ZEST trial have not affected his stent usage, including his preference for Taxus Liberté.[8]

**D.    Equity Favors Denying Cordis' Motions For An Injunction**

Cordis lectures this Court and BSC regarding the importance of respecting patent rights. (D.I. 66 at 29 ("At some point, enough is enough.")) In so doing, Cordis ignores the fact that *every single bare-metal and drug-eluting stent that Cordis has sold since 1999, including the Cypher stent, has infringed one or more BSC patents*. For example, Cordis continues to

---

[8]    As demonstrated by the declarations of Drs. Garratt and Turco, there is a compelling public interest in allowing BSC to continue selling the Taxus Liberté stent. Cordis' comparison of the golf balls in *Callaway Golf Co. v. Acushnet Co.* to cardiovascular stents, which are used to save people's lives, is neither appropriate nor compelling. 585 F.Supp. 2d 600 (D. Del. 2008). Moreover, there is no indication in *Callaway* that the patentee's competing golf balls were themselves infringing, as Cordis' Cypher stents have been adjudicated here.

19

infringe BSC's '021 patent by selling Cypher even though the Federal Circuit affirmed the jury verdict that found Cypher to be infringing and the asserted claim not invalid.

Cordis does not even attempt to deny or justify its infringement. To date, Cordis has filed three briefs in this case to support its motion for a preliminary injunction, summary judgment and permanent injunction, each larded with inflammatory language regarding BSC. Cordis nowhere acknowledges or discusses the infringement verdicts against Cypher and all of its other cardiovascular stents sold since 1999. It is Cordis that has shown complete disregard for the patent rights of others. As stated in BSC's opening supplemental brief, if equity is to be given any weight, this Court should deny Cordis' attempt to secure injunctions as a means to boost the infringing sales of its Cypher stent.

## CONCLUSION

For all the foregoing reasons, BSC respectfully requests that this Court dismiss this action as barred by *res judicata* or, in the alternative, deny Cordis' motions for a preliminary injunction, summary judgment and a permanent injunction.

Dated: May 20, 2009                          Respectfully submitted,


                                             /s/ Adam W. Poff
                                             Josy W. Ingersoll (I.D. #1088)
                                             John W. Shaw (I.D. #3362)
                                             Adam W. Poff (I.D. #3990)
                                             YOUNG CONAWAY STARGATT
                                             & TAYLOR, LLP
                                             The Brandywine Building
                                             1000 West Street, 17th Floor
                                             P.O. Box 391
                                             Wilmington, Delaware 19801
                                             (302) 571-6600

                                             *Attorneys for Defendants*
                                             *Boston Scientific Corporation and*
                                             *Boston Scientific Scimed, Inc.*



*Of Counsel*:

John M. Desmarais
Peter J. Armenio
Young J. Park
KIRKLAND & ELLIS
153 East 53rd Street
New York, New York 10022
(212) 446-4800

21

# EXHIBIT A

REDACTED

## CERTIFICATE OF SERVICE

I, Adam W. Poff, hereby certify that on May 20, 2009, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

Steven J. Balick, Esquire
Ashby & Geddes
500 Delaware Avenue, 8th Floor
Wilmington, DE 19801

I further certify that on May 20, 2009, I caused a copy of the foregoing document to be served by e-mail on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

**BY E-MAIL**

Gregory L. Diskant, Esquire
Patterson, Belknap, Webb & Tyler
1133 Avenue of the Americas
New York, NY 10036

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ *Adam W. Poff*
Josy W. Ingersoll (No. 1088)
John W. Shaw (No. 3362)
Adam W. Poff (No. 3990)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com

Attorneys for Boston Scientific Corporation and
Boston Scientific Scimed, Inc.

## CERTIFICATE OF SERVICE

I, Adam W. Poff, hereby certify that on May 27, 2009, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Steven J. Balick, Esquire
> Ashby & Geddes
> 500 Delaware Avenue, 8th Floor
> Wilmington, DE 19801

I further certify that on May 27, 2009, I caused a copy of the foregoing document to be served by e-mail on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

**BY E-MAIL**

> Gregory L. Diskant, Esquire
> Patterson, Belknap, Webb & Tyler
> 1133 Avenue of the Americas
> New York, NY  10036

> YOUNG CONAWAY STARGATT & TAYLOR, LLP

> /s/ *Adam W. Poff*
> Josy W. Ingersoll  (No. 1088)
> John W. Shaw (No. 3362)
> Adam W. Poff  (No. 3990)
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, DE  19801
> (302) 571-6600
> apoff@ycst.com

> Attorneys for Boston Scientific Corporation and
>   Boston Scientific Scimed, Inc.

DB02:7599815.1                                                                                          054604.1009