## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CORDIS CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civ. No. 08-779-SLR |
| v. | ) |
| | ) |
| BOSTON SCIENTIFIC | ) |
| CORPORATION and BOSTON | ) |
| SCIENTIFIC SCIMED INC., | ) |
| | ) |
| Defendants. | ) |

Steven J. Balick, Esquire, John G. Day, Esquire and Tiffany Geyer Lydon, Esquire of Ashby & Geddes, Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Gregory L. Diskant, Esquire, Eugene M. Gelernter, Esquire, Kathleen M. Crotty, Esquire, Christopher M. P. Jackson, Esquire and Leonard Braman, Esquire of Patterson Belknap Webb & Tyler LLP, New York, New York.

Josy W. Ingersoll, Esquire, John W. Shaw, Esquire and Adam W. Poff, Esquire of Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware. Counsel for Defendants. Of Counsel: John M. Desmaris, Esquire, Peter J. Armenio, Esquire and Young J. Park, Esquire of Kirkland & Ellis LLP, New York, New York.

## MEMORANDUM OPINION

Dated: July 21, 2009
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Cordis Corporation ("plaintiff") filed this patent infringement action against Boston Scientific Corporation and Boston Scimed Inc. ("defendants") on October 17, 2008 following defendants' announcement that they had received FDA approval for their drug-coated coronary stent, the Taxus Liberté. (D.I. 1) Plaintiff asserted causes of action for infringement of claim 2 of U.S. Patent No. 5,895,406 (the "Gray patent") and for a declaratory judgment of infringement of the Gray patent, based upon defendants' pre-launch activities. *Id.* On November 10, 2008, plaintiff filed a combined motion for preliminary injunction, summary judgment of infringement, and for a permanent injunction prohibiting the manufacture or sale of the Taxus Liberté in the United States. (D.I. 4) Cordis has since indicated it does not seek to pursue injunctive relief. (*e.g.*, D.I. 72 at 3) The parties submitted additional briefing focusing on the *res judicata* issue.[1] (D.I. 64, 66, 69) The court heard oral argument on May 27, 2009. Currently pending before the court is the summary judgment portion of plaintiff's motion. (D.I. 4) For the reasons that follow, the court denies the motion.

## II. BACKGROUND

### A. Prior Litigation

---

[1]Plaintiff has (incorrectly) indicated that the court has before it cross-motions on this issue. (D.I. 72 at 3) Defendants submitted an opening brief in support for a motion to dismiss on *res judicata* grounds, and answering and reply briefs were filed. The court notes that no motion to dismiss has been docketed by defendants.

In prior litigation between these parties,[2] plaintiff asserted, *inter alia,* infringement

of the Gray patent by defendants' "Express" family of coronary stents. In August 2004,

the court granted plaintiff leave to amend its complaint to add claims against

defendants' "Liberté"-branded stents. (Civ. No. 03-027, D.I. 161) The 03-027 case was

tried to a jury in June 2005.

At trial, plaintiff asserted that defendants' Liberté and Taxus Liberté stents

infringed claim 2 of the Gray patent. The Gray patent is entitled "Axially Flexible Stent."

Independent claim 1 of the Gray patent reads as follows:

> 1. A stent having first and second ends with an intermediate section
> therebetween, and a longitudinal axis, comprising: a plurality of longitudinally
> disposed bands, wherein each band defines a generally continuous wave having
> a spatial frequency along a line segment parallel to the longitudinal axis; and a
> plurality of links for maintaining the bands in a tubular structure, wherein the links
> are so disposed that any single circumferential path formed by the links is
> discontinuous; such that the links and bands define an expandable structure
> having axial flexibility in an unexpanded configuration.

Dependant claim 2 adds the limitation that "each link is axially displaced from any

circumferentially adjacent link."

Plaintiff's infringement evidence focused on the Liberté stent, which is a bare

metal stent. Plaintiff's expert, Dr. Buller, testified that the Taxus Liberté is "exactly the

same metallic stent" as the Liberté stent; the Taxus Liberté has the addition of a

drug/polymer coating. (*Id.*, D.I. 365 at 414:14-22[3]) Plaintiff elicited testimony that Dr.

Buller's use of the term "Liberté" in his testimony referred to both Liberté and Taxus

---

[2]*Cordis Corp. v. Boston Sci. Corp. and Scimed Life Systems, Inc.*, Civ. No. 03-027-SLR ("the 03-027 case").

[3]Filed in the action at bar at D.I. 5, ex. D.

2

Liberté. (*Id.*) Thereafter, Dr. Buller testified that "Liberté" has every limitation of claim 2 of the Gray patent.  Dr. Buller testified that "[t]he Liberté stent is an axial flexible stent along its end and it can be described completely as bands and links." (*Id.* at 532:14-19) Dr. Buller described in more detail the flexibility of the Liberté stent with the aid of a demonstrative showing a Liberté stent bent along its length.

Plaintiff's infringement claim with respect to the Taxus Liberté was brought under 35 U.S.C. § 271.  Prior to the submission of the case to the jury, defendants moved for judgment as a matter of law dismissing plaintiff's claims against the Taxus Liberté on the basis that plaintiff had offered no proof that Taxus Liberté was made, used, or sold in the United States; defendants did not yet have FDA approval for such activities. (*Id.*, D.I. 367 at 1027:17-23, 1048:1-5)  Defendants represented that the Taxus Liberté was made in Ireland and sold abroad; "if [it gets] FDA approval and the structure hasn't changed and we've lost this case, well, then, it would be difficult for us to sell the product without taking some steps.  But that's a question for another day." (*Id.* at 1031:15-19)  Recognizing plaintiff's position that the Liberté and Taxus Liberté stents have the same core (metal) structure, the court questioned the effect of excluding the Taxus Liberté from the damages consideration on the basis that it lacked jurisdiction over a product that is not made, used or sold in the United States.  Defendants' counsel stated that, if it lost at trial, plaintiff would properly address whether Taxus Liberté was "colorably different" from Liberté during contempt proceedings brought under a later-issued permanent injunction.  "If it was the same, we'd be in trouble." (*Id.* at 1063:14) The court denied plaintiff's request to reopen its case to admit evidence (not adduced at trial) regarding defendants' United States manufacturing and/or sales activities.  The

3

court concluded, on the trial record before it, that it did not have jurisdiction over the Taxus Liberté product. (*Id.*, D.I. 368 at 1307:12-16)

Because it viewed the matter as jurisdictional, the court dismissed plaintiff's claim with respect to the Taxus Liberté without prejudice, consistent with the authority that existed at the time of trial (in 2005). The jury subsequently found that the Liberté infringes claim 2 of the Gray patent. The verdict was upheld by the court post-trial. *See Cordis Corp. v. Boston Scientific Corp.*, Civ. No. 03-027, 2006 WL 1305227 (D. Del. May 11, 2006).

In view of its pronouncement in *Litecubes LLC v. Northern Light Products, Inc.*, 523 F.3d 1352 (Fed. Cir. 2008), the Federal Circuit held in the subsequent appeal that "a nexus to the United States was an element of [plaintiff]'s liability claims, rather than a jurisdictional requirement." *Cordis Corp. v. Boston Scientific Corp.*, 561 F.3d 1319, 1349 (Fed. Cir. 2009). The Federal Circuit upheld the court's denial of defendants' post-trial motions, but remanded with instructions that this court dismiss plaintiff's claims as to the Taxus Liberté with prejudice. *Id.*

## B. The Action at Bar

The complaint in this case was filed October 17, 2008. (D.I. 1) In plaintiff's words, "[t]his case is aimed at new infringing activities that are about to begin in 2008." (D.I. 5 at 5) More specifically, defendants announced on October 10, 2008 that FDA approval was obtained for the Taxus Liberté and that the Taxus Liberté would be offered for sale in the United States in November 2008. (D.I. 1 at 11) Plaintiff alleges that, insofar as a jury has already found that the Liberté stent infringes claim 2 of the

4

Case 1:08-cv-00779-SLR-LPS   Document 73   Filed 07/22/09   Page 6 of 18 PageID #: 3339

Gray patent, *res judicata* dictates that making, using, selling or offering Taxus Liberté for sale in the United States necessarily infringes claim 2 of the Gray patent.

## C. The Liberté and Taxus Liberté Stents

As noted previously, Dr. Buller testified for plaintiff during the 03-027 case that the Liberté and Taxus Liberté stents are identical except that the Taxus Liberté has a drug/polymer coating. There is no indication that defendants cross-examined Dr. Buller on this point, and plaintiff did not offer other evidence regarding the Taxus Liberté. The court noted during the 03-027 trial that plaintiff offered "no proof that the Taxus Liberté, as it might be sold in the United States, has the same structure." (Civ. No. 03-027, D.I. 368 at 1050:2-5) In connection with the motion at bar, plaintiff points to no other trial evidence regarding the physical structure of the Taxus Liberté. (*e.g.*, D.I. 72 at 7) The parties debate whether the drug/polymer coating of the Taxus Liberté results in a different "axial flexibility" than that of the Liberté, and as required by claim 2 of the Gray patent.

## III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from

which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## IV. DISCUSSION

### A. Issue Preclusion and Claim Preclusion

Issue preclusion, also called collateral estoppel, applies when "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." *Jean Alexander Cosmetica, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006) (citations

6

omitted). The Third Circuit has also considered whether the party being precluded had

"a full and fair opportunity to litigate the issue in question in the prior litigation" and, in

addition, whether the issue was determined by final judgment. *Id.* (citations omitted).

Claim preclusion, the modern parlance for *res judicata*, "gives dispositive effect

to a prior judgment if a particular issue, although not litigated, could have been raised in

the earlier proceeding." *CoreStates Bank, N.A. v. Huls America, Inc.*, 176 F.3d 187,

194 (3d Cir. 1999) (citing *Board of Trustees of Trucking Employees Welfare Fund, Inc.*

*v. Centra*, 983 F.2d 495 (3d Cir. 1992)). Claim preclusion requires: "(1) a final

judgment on the merits in a prior suit involving; (2) the same parties or their privities;

and (3) a subsequent suit based on the same cause of action." *Id.* (citing *Centra*, 983

F.2d at 504). If these three factors are present, any claim that was raised previously, or

which could have been raised previously, must be dismissed as precluded by collateral

estoppel. *Id.* Only the third factor is disputed in this case.

In sum,

[c]laim preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit. Issue preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue arises on the same or a different claim.

*In re Continental Airlines, Inc.*, 279 F.3d 226, 232 (3d Cir. 2002) (citations omitted).

"Whether two claims for infringement constitute the 'same claim' is an issue

particular to patent law and thus Federal Circuit law applies." *Roche Palo Alto LLC v.*

*Apotex, Inc.*, 531 F.3d 1372, 1379 (Fed. Cir. 2008). A "claim" with respect to claim

preclusion "is used in the sense of the facts giving rise to the suit." *Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 478 (Fed. Cir. 1991). That is, the "claim" rests on the facts regarding the patent owner's claim for infringement. *Id.* at 479. Two infringement "claims" are considered the "same claim" if the accused products in the two suits are "essentially the same," or where "the differences between them are merely 'colorable' or 'unrelated to the limitations in the claim of the patent.'" *Roche,* 531 F.3d at 1379 (citing *Accumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1324 (Fed. Cir. 2008) and *Foster*, 947 F.2d at 479-80)).

## B. Analysis

The court is charged, at this juncture, with two determinations: (1) whether the **assertion** that the Taxus Liberté infringes the Gray patent under 35 U.S.C. § 271 in the 03-027 case bars the **assertion** that the Taxus Liberté infringes the Gray patent under 35 U.S.C. § 271 in the action at bar; and (2) whether the jury's finding that the **Liberté** stent infringes claim 2 of the Gray patent bars litigation of the issue of infringement by the **Taxus Liberté** in this case. The court frames the first issue as one of claim preclusion, the second as a matter of issue preclusion.

### 1. Issue preclusion does not apply to plaintiff's prior claim of infringement by the Taxus Liberté

In the context of the 03-027 case, defendants assert that "[plaintiff]'s failure of proof was total," *i.e.*, not only related to the geographical elements of its infringement claim. (D.I. 64 at 14-15) Plaintiff asserts that the dismissal "with prejudice" only bars relitigating the issue of whether defendants made, used or sold Taxus Liberté stents in the United States as of 2005 – not its present claims for infringement which focus on

8

2008 and beyond. (D.I. 66 at 17)

When the court dismissed plaintiff's claim in the 03-027 case, it did so for (what it believed to be) jurisdictional reasons. Therefore, it was "not necessary to the [court's] decision" to render a ruling with respect to plaintiff's proffer on whether the Taxus Liberté met all of the limitations of claim 2 of the Gray patent. The court's comment that plaintiff offered "no proof that the Taxus Liberté, as it might be sold in the United States, has the same structure" (Civ. No. 03-027, D.I. 368 at 1050:2-5) is not equivalent to a binding determination.

The Federal Circuit subsequently found, in view of *Litecubes*, 523 F.3d at 1363, that "a failure to prove the allegations in a complaint requires a decision on the merits." *Cordis*, 561 F.3d at 1339. It noted plaintiff's argument that the Taxus Liberté has the same structure as the Liberté stent, but did not issue a specific holding in that regard, stating only that this court did not err in determining that the Taxus Liberté and Liberté are "different **products**." *Id.* at 1339 n.17 (emphasis added). There is no question that the two stents are different "products." One is a bare metal stent, the other is a drug-eluting stent; each stent sells under different brand names in (until recently) different geographical areas. The court finds no basis for reading into the Federal Circuit's comment any specific finding as to whether the Taxus Liberté meets each of the limitations of claim 2 of the Gray patent. Because neither this court nor the Federal Circuit specifically addressed whether the Taxus Liberté meets the limitations of claim 2 of the Gray patent, issue preclusion cannot apply.

## 2. Claim preclusion does not bar the instant suit

9

Plaintiff voluntarily interjected the Taxus Liberté into the 03-027 case and there is no indication that, between that litigation and this one, the Taxus Liberté underwent any structural modifications. In short, the same product (the Taxus Liberté) was accused of infringing the same claim (claim 2 of the Gray patent) under the same theory of infringement (35 U.S.C. § 271) in both litigations.

The fact that the jury did not weigh in on plaintiff's infringement evidence regarding the Taxus Liberté, consisting mainly of Dr. Buller's combined testimony regarding the Taxus Liberté and the Liberté stents, is of no moment. When there exists a final judgment in a prior suit between the parties based on the same cause of action, the dispositive question with respect to claim preclusion is not whether the jury ultimately considered the claim at issue, but whether the claim was either actually raised or "could have been raised" previously. *Centra*, 983 F.2d at 504. Plaintiff had the opportunity to and, in fact, did raise its infringement claim before. Notably, however, plaintiff's prior suit involved sales and activities prior to 2005, while the current action seeks to recover damages for infringing acts commencing in 2008 – evidence of which could not arguably have been presented previously.

### a. Relevant caselaw

The Supreme Court spoke to this issue in *Lawlor v. National Screen Service Corporation*, 349 U.S. 322 (1955), an antitrust suit. In *Lawlor*, the Supreme Court examined whether *res judicata* applied to bar a second lawsuit. The first complaint alleged that defendants conspired to establish a monopoly by means of exclusive licenses; the first lawsuit was settled in 1943. *Id.* at 324. A second suit was later filed

10

by plaintiffs alleging that the settlement was a device used to perpetuate defendants'

conspiracy, and also alleging that five other defendants had joined the conspiracy and

that tie-in sales were being used to further the monopoly. *Id.* at 325. Plaintiffs sought

damages in the second suit only for injuries suffered from 1943 forward, after the date

of settlement. *Id.* Against this backdrop, the Supreme Court reversed the Third

Circuit's holding that both suits involved "essentially the same course of wrongful

conduct," stating:

Such a course of conduct – for example, an abatable nuisance – may frequently
give rise to more than a single cause of action. And so it is here. The conduct
presently complained of was all subsequent to the 1943 judgment. In addition,
there are new antitrust violations alleged here – deliberately slow deliveries and
tie-in sales, among others – not present in the former action. While the 1943
judgment precludes recovery on claims arising prior to its entry, it cannot be
given the effect of extinguishing claims which did not even then exist and which
could not possibly have been sued upon in the previous case. . . . Under these
circumstances, whether the defendants' conduct be regarded as a series of
individual torts or as one continuing tort, the 1943 judgment does not constitute a
bar to the instant suit.

*Id.* at 327-28.

The applicability of the so-called "*Lawlor* rule" to patent infringement suits

alleging infringement by the same product during different periods of time has been

analyzed only on a discrete number of occasions. In *The Young Engineers, Inc. v.*

*United States International Trade Commission*, 721 F.2d 1305 (Fed. Cir. 1983), the

Federal Circuit considered whether claim preclusion barred the relitigation of the same

infringement claim in a second lawsuit based upon acts of infringement occurring after

a first judgment. The *Young Engineers* Court noted the following:

[T]he status of an infringer is derived from the status imposed on the thing that is
embraced by the asserted patent claims, the thing adjudged to be infringing. By

11

> the same token, where the alleged infringer prevails, the accused devices have the status of noninfringements, and the defendant acquires the status of a noninfringer to that extent.

*Id.* at 1316. Because plaintiff "made no attempt" to show that the accused devices in the second suit were the same as in the prior (1969) litigation, and the United States Internal Trade Commission found that "at least some of the devices before it were 'new' models," the *Young Engineers* court found that claim preclusion had not been established. *Id.* at 1316-17. In so holding, the Federal Circuit noted that the fact that new devices were at issue in the second litigation made that case "similar to *Lawlor* . . . where the purportedly similar series of acts were found to be in part different in nature." *Id.*

In contrast to both *Lawlor* and *Young Engineers*, the only product at issue in the present litigation (the Taxus Liberté) was undisputably at issue in the 03-027 case; the only difference between the allegations is the time period of the alleged infringement. This specific scenario does not appear to have been addressed by the Federal Circuit, but by two district courts, reaching contrasting results.

In *Single Chip Systems Corporation v. Intermec IP Corporation*, 495 F. Supp. 2d 1052 (S.D. Cal. 2007), the United States District Court for the Southern District of California had pending before it a 2004 counterclaim and a 2007 complaint alleging infringement of the same patent.[4] The 2004 counterclaim sought damages for only pre-2005 acts of infringement under 35 U.S.C. § 271(a)-(c), while the 2007 suit sought

_____

[4]Because there was no final judgment in the 2004 action, the court engaged in a "claim splitting" analysis under Ninth Circuit law, requiring the application of claim preclusion principles. 495 F. Supp. 2d at 1058.

damages for post-2005 acts of infringement under 35 U.S.C. § 271(a)-(c) as well as §
271(f) . The same products were named in both suits. In the words of the *Single Chip*
court, both claims alleged "identical facts"; the 2007 complaint disclosed "no additional
factual allegations that would support an additional cause of action under 35 U.S.C. §
271(f)." *Id.* at 1062-63. That is, both suits "[arose] out of the same transactional
nucleus of operative facts." *Id.* at 1063 (citing *Int'l Union of Operating Engineers-
Employers Const. Indus. Pension, Welfare and Training Trust Funds*, 994 F.2d 1426,
1429-30 (9th Cir. 1993)).[5]

With respect to the "continuing tort" theory of patent infringement, the *Single
Chip* court noted that the *Lawlor* Court specifically rejected the notion that claim
preclusion should turn on "whether the [parties'] conduct [is] regarded as a series of
individual torts or as one continuing tort," and looked instead at the character of the
conduct at issue. *Id.* at 1064 ("[T]he alleged nature of patent infringement as a
'continuing tort' plays only a minor role, if any, in determining whether successive
lawsuits have the same cause of action") (citing *Lawlor*, 349 U.S. at 328). Ultimately,
because "substantially the same evidence" would be presented in both actions, the
*Single Chip* court dismissed the 2007 complaint. *Id.* at 1065.

___

[5]Ninth Circuit law required the *Single Chip* court to analyze the differences in the
factual allegations of both claims. 495 F. Supp. 2d at 1062 (citing *Harkins Amusement
Enterprises, Inc. v. Harry Nace Co.*, 890 F.2d 181 (9th Cir. 1989)). The Third Circuit
sanctions the same approach, notwithstanding that its test is described in more general
terms ("suit based on the same cause of action") than the Ninth's Circuit's test ("suits
arose out of the same transactional nucleus of facts"). As noted by the Federal Circuit,
courts have espoused different variations of this prong in an effort to more clearly frame
the analysis of whether the claims could have been tried together. *See Ammex, Inc. v.
U.S.*, 334 F.3d 1052, 1056 (Fed. Cir. 2003) (collecting cases).

In *Williams v. The Gillette Company*, 887 F. Supp. 181 (N.D. Ill. 1995), a case

relied upon by plaintiff, the United States District Court for the Northern District of Illinois

reached the opposite result. The *Williams* court considered whether a second suit

alleging infringement of the same patent by the same product (as well as additional

products) was barred in view of *Lawlor*. That court determined that neither the *Lawlor*

rule nor Seventh Circuit authority[6] bars a "second suit for damages caused by conduct

occurring **after** the first judgment." *Id.* at 184 (emphasis in original).

The court agrees with the analysis used in *Williams*.[7] A judgment "cannot be

given the effect of extinguishing claims which did not then even exist." *Lawlor*, 349 U.S.

at 328. Defendants did not have FDA approval to market the Taxus Liberté in 2005.

Plaintiff could not have anticipated when FDA approval, and subsequent marketing and

---

[6]The *Williams* court cited *Singer Co. v. Skil Corp.*, 803 F.2d 336, 342-43 (7th Cir. 1986), in which the Seventh Circuit held that a claim for royalty payments accruing after a first litigation was not barred, and *Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 669 F.2d 490, 494 (7th Cir. 1982), in which the Seventh Circuit stated that, in an antitrust suit, a new cause of action accrues with each act of harmful conduct pursuant to *Lawlor*.

[7]The court disagrees with BSC's assertion that *Williams* is predicated on "legal error" insofar as that court declined to apply the Federal Circuit's holding in *Foster v. Hallco Mfg. Co., Inc.*, 947 F.2d 469 (Fed. Cir. 1991) to reach an opposite result. (D.I. 64 at 13)  In *Foster*, the Federal Circuit held that a consent decree entered in prior litigation between the parties which stated that patents were valid and enforceable could operate to bar relitigation of validity in a subsequent suit; it did not have sufficient factual findings before it to make a determination of whether claim or issue preclusion applied. 947 F.3d at 483.  As stated in *Williams*, the *Foster* Court held that "general principles of *res judicata* apply to a consent decree addressing patent validity," but "nowhere did the court say that *res judicata* will **always** apply in a second suit between the same parties based on the same patent and the same device." 887 F. Supp. at 185 (emphasis in original).  The court finds no error in this characterization of *Foster*'s holding; "[t]he *Foster* Court had no occasion to address the issue [of] whether the *Lawlor* rule applies to a patent case seeking damages for infringement accruing after a judgment in a previous case." *Williams*, 887 F. Supp. at 185.

14

U.S. sales of the Taxus Liberté, would have commenced. Plaintiff could not have accurately predicted the amount or value of such sales in 2005, nor could the availability of any non-infringing alternatives been assessed three years prior to the Taxus Liberté's launch. The conduct at issue in this litigation occurred after the first judgment and could not possibly have been sued upon in the 03-027 case.[8]

The court's holding, therefore, is consistent with the principle espoused in *Lawlor* and, additionally, Federal Circuit jurisprudence describing patent infringement as a continuing tort, whereby each act gives rise to a separate cause of action. *See Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1221-22 (Fed. Cir. 1995); *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1031 (Fed. Cir. 1992). A plaintiff may bring a cause of action based upon any infringing act, not merely the first infringing act, so long as claim preclusion, issue preclusion, or other defenses (such as laches) do not bar the claim. That is the case here.

### 3. The jury's finding that the Liberté infringes claim 2

Having determined that claim preclusion does not bar the instant suit, the court next addresses plaintiff's argument that the jury's finding that the Liberté stent infringes necessitates a finding that the Taxus Liberté also infringes claim 2 of the Gray patent. This issue turns on whether the Liberté and Taxus Liberté are no more than "colorably" different products. *Roche,* 531 F.3d at 1379. There is no dispute that the Taxus

---

[8]The court's conclusion in this regard is not altered by plaintiff's prior request to reopen the trial record (in the 03-027 case) to admit evidence of United States activities and/or sales regarding the Taxus Liberté, as any such evidence would have necessarily pre-dated FDA approval and had little (if any) demonstrable connection to defendants' United States launch in 2008.

Liberté comprises all of the infringing structural elements of the Liberté stent, with the addition of a drug/polymer coating.[9] The parties debate whether the drug/polymer coating imparts a difference in the overall "axial flexibility" of the stent, as claimed by Gray; claim 2 of Gray does not require any particular degree of flexibility, only that "the links and bands define an expandable structure having axial flexibility in an unexpanded configuration."

Plaintiff's expert, Dr. Bueller, testified (in 2009) that axial flexibility should be measured by the stent's "trackability," or the ease with which the stent can be maneuvered through a passage. (D.I. 39 at 9, n.2 & ex. 9 at 242:14-243:24, 265:5-16) According to defendants, Dr. Bueller's application of this limitation demonstrates that the Taxus Liberté is more than colorably different than the Liberté stent. (*Id.*) Defendants' expert, Dr. James E. Moore, Jr., Ph.D., opines that "Dr. Buller's infringement analysis for claim 2 of the Gray [ ] patent potentially differentiates between the bare-metal Liberté stent and the drug-eluting Taxus Liberté stent. Applying Dr. Buller's methodology, a determination of whether the Liberté stent satisfies all of the limitations of claim 2 – including the 'axial flexibility' limitation – would not be determinative of whether the Taxus Liberté stent infringes that claim." (D.I. 43 at ¶ 8) Plaintiff argues that defendants' axial flexibility defense is a red herring, citing numerous instances where defendants characterize the Taxus Liberté as "flexible." (D.I. 66 at 14-

---

[9]Generally, drug-eluting stents consist of three parts: the stent platform, coating, and drug. The coating is typically made of a polymer.

16

15[10])

The meaning of "axial flexibility" was disputed in the 03-027 case. Plaintiff asserted that "axial flexibility" meant that "the stent can bend or flex continuously along its length"; defendants asserted that it meant that "the stent can bend or flex in the direction of the longitudinal axis." The court adopted plaintiff's proposed construction. (Civ. No. 03-027, D.I. 358 at 25) The jury ultimately found that the Liberté stent met the axial flexibility limitation.

With respect to plaintiff's summary judgment motion, defendants have adduced sufficient evidence (via Dr. Moore) to demonstrate that discovery is warranted regarding axial flexibility. The parties do not point to specific evidence regarding the axial flexibility of the Taxus Liberté stent. The court declines to adjudge infringement by the Taxus Liberté before the credibility of Dr. Moore's theory has been fully vetted in the discovery process.

## V. CONCLUSION

For the aforementioned reasons, the court denies plaintiff's motion for summary judgment. (D.I. 4) An appropriate order shall issue.

---

[10](Citing, e.g., D.I. 42 at ¶ 11 (Decl. of William H. Kucheman, BSC's Senior Vice President and Group President of the Cardiovascular Group); D.I. 41 at ¶ 14 (Decl. of Mark A. Turco, M.D.))